**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X
                                                                   :
APPLE EIGHT HOSPITALITY OWNERSHIP, INC.,                           :
                                                                   :
                              Plaintiff,                           :      Case No.:
                                                                   :
        v.                                                         :      **COMPLAINT**
                                                                   :
LUXURBAN RE HOLDINGS LLC AND LUXURBAN                              :
HOTELS, INC.,                                                      :
                                                                   :
                              Defendants.                          :
------------------------------------------------------------------ X

        Plaintiff Apple Eight Hospitality Ownership, Inc. ("Apple Eight" or "Plaintiff"), by its

attorneys, Hogan Lovells US LLP, for its complaint against defendants LuxUrban Re Holdings

LLC ("Lux Holdings") and LuxUrban Hotels, Inc. ("Lux Hotels," and together with Lux

Holdings, the "Defendants"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

        1.      This action arises out of Lux Holdings' egregious actions to: (i) pocket revenue

generated from the operation of a commercial property known as Hotel 57 located at 130 East

57th Street in Manhattan ("Hotel 57") while unlawfully remaining in possession of the property,

(ii) default on its lease obligations, and (iii) blatantly disregard its obligations to pay wages and

benefits to Hotel 57's unionized employees.  Indeed, Lux Holdings has prevented Apple Eight

from recovering possession of Hotel 57 since April 16, 2024, notwithstanding Lux Holdings'

failure to timely and fully pay rent, including the failure to make any payments to Apple Eight

since April 1, 2024, and depriving Apple Eight of possession of the property and hotel revenues

that rightfully belong to Apple Eight.

2.      Lux Holdings' actions have allowed it to reap a daily windfall from Hotel 57's reservations and guest stays, while Apple Eight incurs increasing daily expenses and liabilities resulting from Lux Holdings' illegal holdover.

3.      Lux Holdings leased Hotel 57 from Apple Eight pursuant to a sublease agreement that was anticipated to generate over $95 million in rental income, in addition to offsetting in excess of $30 million in anticipated real estate tax expense for Apple Eight over a fifteen year period.  Lux Holdings guaranteed Lux Hotels' obligations under the sublease agreement.  Almost immediately after the sublease agreement became effective, however, Lux Holdings began defaulting on its rent obligations.  As of April 12, 2024, Lux Holdings owed Apple Eight $1,761,326.45 (excluding interest, fees and costs) in unpaid rents.  Notwithstanding that Apple Eight has properly terminated the sublease in accordance with its terms, Lux Holdings has refused to surrender possession of Hotel 57, willfully withholding holdover payments that are due and owing to Apple Eight, and collecting funds from Hotel 57's operations.  Apple Eight has therefore been forced to initiate eviction proceedings in the Supreme Court, County of New York, which remain ongoing.

4.      In the meantime, Apple Eight's expenses and liabilities due to Lux Holdings' impermissible holdover pile on daily.  Just this month, Apple Eight learned for the first time that Lux Holdings withheld information about two union arbitration proceedings commenced against Lux Holdings (and Apple Eight), and that those two arbitrations resulted in awards against Lux Holdings arising from its failure to pay union members' wages and benefits under a collective bargaining agreement.  Lux Holdings never provided Apple Eight with notice of the arbitration hearings, precluding Apple Eight from participating and raising any defenses at the hearings.

5.      Lux Holdings' obligations to the union remain outstanding in the amount of over $3 million, and now the union is turning to Apple Eight to collect outstanding wages and benefits owed to its members in a separate demand for arbitration.

6.      Against this backdrop, Apple Eight now brings suit for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion.

7.      Apple Eight seeks damages and losses suffered as a result of Defendants' misconduct, in an amount to be determined at trial, in excess of $83 million[1], as well as compensatory damages, consequential damages, punitive damages, interest, attorney's fees, and any other relief deemed equitable by this Court as a result of Defendants' misconduct.

## PARTIES

8.      Plaintiff Apple Eight is a corporation organized under the laws of the Commonwealth of Virginia, with a principal place of business located at 814 East Main Street, Richmond, VA 23219.

---

[1] The total damages figure includes the following amounts:

- o   $73,171.93: Owed at the end of March
- o   $1,258,987.85: Security deposit previously applied to unpaid amounts
- o   $429,166.67: April 1 Base Rent
- o   $238,223.85: April Additional Rent
- o   $429,166.67: May 1 Base Rent
- o   $233,104.43: May Additional Rent
  - ▪   Subtotal is $2,661,821.40
- o   $1,618,452.06: Owed to Union Benefit Funds (through April)
  - ▪   Subtotal is $4,280,273.46
- o   $79,477,285.41: Total Base rent and Additional Rent from June 1, 2024 through end of term in the amount of $121,381,545.07, discounted to present value.

**Total = $83,757,558.87**

9.      Defendant Lux Holdings is a limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 2125 Biscayne Boulevard, #253, Miami, FL 33137.

10.      Defendant Lux Hotels is a corporation organized under the laws of the State of Delaware, with a principal place of business located at 2125 Biscayne Boulevard, #253, Miami, FL 33137.

## JURISDICTION

11.      The Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332.

12.      Plaintiff Apple Eight is incorporated in Virginia, and its principal place of business is Virginia.

13.      Defendants are incorporated in Delaware, and their principal place of business is in Florida.

14.      Upon a review of Defendants' publicly available filings, there is no indication that Defendants are connected to Virginia.

15.      Upon information and belief, the states in which Defendants are citizens, based on publicly available information about their members, activities, and connections to particular states, include Delaware and Florida.

16.      The amount in controversy, exclusive of interest and costs, exceeds the sum or value or $75,000.

17.      Accordingly, the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

18.      This Court has personal jurisdiction over the parties as Apple Eight is the landlord and Lux Holdings was the tenant of Hotel 57 located in New York, New York.

## VENUE

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this action arises out of the Sublease for Hotel 57 which is located within the United States District Court for the Southern District of New York.

## BACKGROUND

### A. The Hotel 57 Sublease

1.     On June 9, 1997, Jane Harriet Goldman, Allan Howard Goldman, and Louisa Little, as Executors of the Last Will and Testament of Sol Goldman d/b/a Empire Associates Realty Co., as to an undivided sixty percent interest; Jane Harriet Goldman, Allan Howard Goldman and Louisa Little, as Co-Trustees of the Lillian Goldman Marital Trust under the Will and Testament of Sol Goldman, as to an undivided 20 percent interest, and Lillian Goldman, individually, as to an undivided 20 percent interest, as Lessor ("Original Lessor") and (b) Fifty Seventh Street Operating, LLC ("Original Lessee"), entered into a Lease Agreement, dated as of June 9, 1997 (the "Overlease"), for property located at 130 East 57th Street, New York, New York 10022 (the "Premises"). *See* Exhibit 1 (Sublease Agreement, Ex. A).

2.     On November 22, 2006, the Original Lessee assigned the Overlease to 57th Street Owner, LLC pursuant to an Assignment and Assumption of Lease, dated as of November 22, 2006, between Original Lessee and 57th Street Owner, LLC. *See* Exhibit 1 (Sublease Agreement, Ex. A).

3.     On December 27, 2007, 57th Street Owner, LLC assigned the Overlease to Apple Eight pursuant to an Assignment and Assumption of Lease, dated as of December 27, 2007 between 57th Street Owner, LLC and Apple Eight. *See* Exhibit 1 (Sublease Agreement, Ex. A).

4.      On January 4, 2008, 57th Street Owner, LLC re-assigned the Overlease to Apple Eight pursuant to an Assignment and Assumption of Lease, dated January 4, 2008, by and between 57th Street Owner, LLC and Apple Eight.  *See* Exhibit 1 (Sublease Agreement, Ex. A).

5.      From January 4, 2008 through May 16, 2023, Apple Eight was in possession of the Premises pursuant to the Overlease.  *See* Exhibit 1 (Sublease Agreement, Ex. A).  Apple Eight continues to make monthly rent payments as required by the Overlease.

6.      Lux Holdings then entered into possession of the Premises pursuant to a Sublease Agreement, dated May 12, 2023, by and between Lux Holdings and Apple Eight (the "Sublease Agreement").  *See generally* Exhibit 1.

7.      The Premises are comprised of Hotel 57 totaling 210 rooms and 6 rooms occupied as single-room occupancy tenancies.  *See* Exhibit 1 (Sublease Agreement, § 1 (Premises, Permitted Use)).  The Premises are more particularly described in Section 1 of the Sublease Agreement.  *See* Exhibit 1 (Sublease Agreement, § 1).

8.      Pursuant to a Guaranty Agreement, dated May 12, 2023, Lux Hotels unconditionally and irrevocably guaranteed Lux Holdings' payment and performance of its obligations under the Sublease Agreement (the "Guaranty Agreement").  *See* Exhibit 2 (Guaranty Agreement).

9.      Pursuant to a Possession Date Letter Agreement, dated May 23, 2023, Lux Holdings entered into possession of Hotel 57 on May 16, 2023.  The Possession Date Letter Agreement provided that the Sublease Agreement would expire on July 31, 2038.  *See* Exhibit 3 (Possession Date Acknowledgement, dated May 23, 2023).

**B.      Lux Holdings Defaults Under the Sublease Agreement**

10.     Pursuant to Section 5.1.1 of the Sublease Agreement, Lux Holdings agreed to pay Apple Eight the "Base Rent" in "equal monthly installments on or before the first day of each

month, without any prior notice or demand and without any deductions or setoff whatsoever (except as otherwise expressly provided in this Lease)." *See* Exhibit 1 (Sublease Agreement, § 5.1.1). In turn, "Base Rent" is defined at Article 1 of the Sublease Agreement as "$5,150,000 per annum, with an annual increase of three percent (3%) per year over the prior year's Base Rent." *See* Exhibit 1 (Sublease Agreement, § 1). Accordingly, monthly Base Rent payable to Apple Eight under the Sublease Agreement during the first year of the term was $429,166.66.

11.     In addition to Base Rent, the Sublease Agreement provided that "[a]ll sums due from Tenant to Landlord or to any third party under the terms of th[e] Lease (other than Base Rent) shall be additional rent ('Additional Rent')." *See* Exhibit 1 (Sublease Agreement, § 5.2). For example, real estate taxes and the Security Deposit discussed further below qualify as Additional Rent under the Sublease Agreement. Additional Rent that is payable to Apple Eight "shall be paid within thirty (30) days after [Apple Eight's] delivery of written notice to Tenant requesting such payment, unless otherwise specifically provided in this Lease." *See* Exhibit 1 (Sublease Agreement, § 5.2).

12.     In addition to Base Rent and Additional Rent, the Sublease Agreement requires a Security Deposit to be provided by Lux Holdings to Apple Eight in the amount of $5,000,000. *See* Exhibit 1 (Sublease Agreement, § 1 (Security Deposit)). Lux Holdings was required to make the Security Deposit in two tranches. The first deposit in the amount of $2,500,000 was made by wire transfer to Apple Eight in immediately available funds. The Sublease Agreement contemplated that the second deposit in the amount of $2,500,000 would be made via twenty-four installments of $104,167 beginning on May 16, 2023. *See* Exhibit 1 (Sublease Agreement, § 1).

13.    Under Section 15.1.1 of the Sublease Agreement, an Event of Default occurs upon Tenant's "[f]ailure to pay any part of (i) the Base Rent where such failure continues for a period of five (5) days after such payment is due hereunder, or (ii) Additional Rent, or any other sums of money that Tenant is required to pay under this Lease where such failure continues for a period of ten (10) days after such payment is due hereunder. . . ."

14.    Only one grace period for failure to make a payment is permitted under the terms of the Sublease Agreement in any consecutive twelve month period.

15.    Section 5.2 of the Sublease Agreement further provides that "Landlord will have the same remedies for a default in the payment of any Additional Rent as for a default in the payment of Base Rent."

16.    From August 2023 through February 26, 2024, Lux Holdings failed to timely pay Base Rent in the amount of $858,333.34, Additional Rent in the amount of $400,654.51, inclusive of interest and fees through February 15, 2024 (excluding Security Deposit payments), in the aggregate, and (iii) installments of Security Deposits totaling $416,668.00.  While the Security Deposit installments qualify as Additional Rent pursuant to the Sublease Agreement, Apple Eight itemized the Security Deposit separately from Additional Rent in its communications with Lux Holdings for ease of reference.

17.    On February 23, 2024, Apple Eight applied a portion of the Security Deposit it had received in the amount of $1,258,987.85 towards the unpaid rent.  Apple Eight retained the remaining balance of the Security Deposit in the amount of $1,866,012.15 to offset any loss or damage that Apple Eight suffered or may suffer as a result of the Events of Default or Apple Eight's termination of the Lease.[2]

---

[2] As of the date of this filing, the Security Deposit balance is $2,282,680.15.

18.     On February 26, 2024, Apple Eight gave notice to Lux Holdings that an Event of Default had occurred under Section 15.1 of the Sublease Agreement due to Tenant's failure: "(i) under Section 5.1.1 of the Lease to pay Base Rent in equal monthly installments on or before the first day of each month, (ii) under Section 5.2 of the Lease to pay Additional Rent within thirty days after Landlord's delivery of written notice, and (iii) under Section 5.4 of the Lease to make installments of the Security Deposit due."  *See* Exhibit 4 (Notice of Default).

19.     The Notice of Default further notified tenant of:

> Landlord's election to terminate the Lease pursuant to Section 15.2.1 thereof.  The Lease shall terminate effective March 8, 2024 (the "Termination Date"), and Tenant is directed to immediately quit and surrender the Premises to Landlord by the Termination Date in accordance with the terms of the Lease.  .  .  .  For the avoidance of doubt, notwithstanding the termination of the Lease, Tenant shall remain liable for all of its obligations under the Lease for the full term of the Lease, unless and until all amounts due and owing to Landlord under the Lease are indefeasibly paid in full or the parties thereto otherwise agree in writing.

20.     The Notice of Default complied with the Notice requirements set forth in Section 24 of the Sublease Agreement.  *See* Exhibit 1 (Sublease Agreement, § 24).  Specifically, the Notice of Default was "given in writing, sent by certified mail with a return receipt requested, or delivered in person, by reputable overnight courier (e.g., by Federal Express)" to "Tenant at Tenant's applicable address set forth in Article 1."  *See* Exhibit 5 (Notice of Default mailing certificates).

21.     Lux Holdings failed to pay the full Base Rent, Additional Rent, and the Security Deposit due to Apple Eight within 10 days of the Notice of Default.

**C.      Termination of the Sublease Agreement**

22.     On April 15, 2024, Apple Eight gave notice to Lux Holdings that the Sublease

Agreement terminated as of March 8, 2024, because of Lux Holdings' failure to cure all Events

of Default which had occurred under Section 15.1 of the Sublease Agreement.

23.     Apple Eight demanded that Lux Holdings vacate and surrender the Hotel 57 by

5:00 p.m. (eastern) on April 16, 2024.  *See* Exhibit 6 (Termination Notice).

24.     Specifically, the Termination Notice stated, in relevant part:

> This letter shall serve as notice to you that the above-referenced Lease is
> hereby terminated, effective as of March 8, 2024 (the "Termination
> Date").  As set forth in Landlord's Notice of Default, dated February 26,
> 2024 (the "Default Notice"), the Lease is terminated pursuant to Section
> 15.2.1 of the Lease based on your failure (i) under Section 5.1.1 of the
> Lease to pay the full Base Rent due in equal monthly installments on or
> before the first day of each month, (ii) under Section 5.2 of the Lease to
> pay Additional Rent within thirty days after Landlord's delivery of written
> notice, and (iii) under Section 5.4 of the Lease to make installments of the
> Security Deposit due.  These failures have continued intermittently since
> August 2023, and each constitute an Event of Default pursuant to Section
> 15.1.1 of the Lease (the "Events of Default").

> Following the Default Notice, you proposed a payment plan, and, without
> waiving any of Landlord's rights (or any of the Events of Default), we
> allowed you to remain in possession subsequent to the Termination Date
> as we engaged in discussions to address the Events of Default and other
> potential liabilities.  Certain Events of Default, however, remain
> outstanding, including, without limitation, your failure to make a payment
> on April 1, 2024, and other conditions to remaining in possession have not
> been satisfied, including, without limitation, with respect to outstanding
> obligations under the Union Contract, to the Union and the Union
> Employees (as those terms are defined in the Lease).  According to our
> records, the total amount of Base Rent and Additional Rent owed as of
> April 12, 2024 (excluding interest and fees) is $1,761,326.45.

> We demand that you vacate and surrender possession of the Premises by
> 5:00 p.m. (eastern) on Tuesday, April 16, 2024 (the "Surrender Date") in
> the conditions required by the Lease.  If you fail to vacate the Premises by
> the Surrender Date, we shall treat it as an impermissible holding over
> without our consent under Section 19.2 of the Lease.

25.     Section 15 of the Sublease Agreement provides, in relevant part:

Upon the occurrence of an Event of Default, Landlord shall have the following rights and remedies in addition to those set forth in the Overlease:

**15.2.1**.  Landlord may, immediately or at any time thereafter, and without demand or further notice terminate this Lease by notice to Tenant, specifying a date not less than ten (10) calendar days after the giving of such notice on which this Lease shall terminate, and this Lease shall come to an end on the dates specified therein as fully and completely as if such date were the date herein originally fixed for the expiration of the Term . . . *and Tenant will then quit and surrender the Premises to Landlord, but Tenant shall remain liable as hereinafter provided*.

**15.2.2**.  Landlord may, without terminating this Lease, immediately . . . re-enter the Premises or any part thereof, without notice, either by summary proceedings or by any other applicable action or proceeding, and repossess the Premises and dispossess Tenant and any other persons from the Premises and remove any and all of its or their property and effects from the Premises, and in no event shall re-entry be deemed an acceptance of surrender of this Lease or a waiver of the applicable Event of Default. (emphasis added)

26.     The Termination Notice complied with the Notice requirements set forth in Section 24 of the Sublease Agreement.  *See* Exhibit 1 (Sublease Agreement, § 24).  Specifically, the Termination Notice was "given in writing, sent by certified mail with a return receipt requested, or delivered in person, by reputable overnight courier (e.g. by Federal Express)" to "Tenant at Tenant's applicable address set forth in Article 1."  *See* Exhibit 7 (Termination Notice mailing certificates).

27.     Notwithstanding the Sublease Agreement's termination, Lux Holdings remains in possession of Hotel 57 after April 16, 2024 and refuses to surrender possession of the hotel.

28.     Indeed, on April 16, 2024, Lux Holdings made it clear that they would not surrender Hotel 57.  *See* Exhibit 8 (April 16, 2024 email from Defendant to Apple Eight re: Hotel 57 Lease Termination Notice).

29.     Therefore, Lux Holdings is unlawfully holding over in violation of the Sublease Agreement and without Apple Eight's permission.

30.     While Lux Holdings impermissibly holds over, it has not paid any payments to Apple Eight since March 18, 2024.

**D.      Apple Eight Files a Holdover Proceeding to Regain Possession of Hotel 57**

31.     On April 19, 2024, Apple Eight filed a holdover proceeding in the Supreme Court of New York, New York County seeking a final judgment awarding possession of Hotel 57 to Apple Eight.

32.     In the holdover proceeding, Apple Eight seeks: (i) final judgment awarding possession of Hotel 57, (ii) the issuance of a warrant of eviction to remove Lux Holdings from possession of Hotel 57, (iii) a judgment against Lux Holdings for rent in arrears (including Base Rent and Additional Rent as defined in the Sublease Agreement), and/or fair value use and occupancy of Hotel 57 up to and including the date of trial, and costs and disbursements incurred herein plus legal fees, in an amount to be determined by this Court.  *See* Exhibit 9 (Holdover Petition).

33.     The return date on the Holdover Petition is June 7, 2024.

34.     Since April 16, 2024, Lux Holdings continues to generate revenue from the hotel's operations, including guest stays and reservations.

35.     At the same time, Apple Eight sustains substantial daily losses, including rental income from reletting Hotel 57 and lost revenue from the hotel's operations, while continuing to make monthly rental payments under the Overlease without the benefit of any rental income or revenue from the hotel's operations.

**E.      Lux Holdings Willfully Ignores Its Union Obligations**

36.     Apple Eight and the New York Hotel Trades Council and Hotel Association of New York City, Inc. (the "Union") are parties to a collective bargaining agreement known as the Industry Wide Agreement between the Union and the Hotel Association of New York City, Inc.

12

(the "Union Contract") as well as an Owner Agreement, dated January 4, 2008 (the "Owner Agreement").

37.     Pursuant to an Assumption Agreement between Apple Eight and Lux Holdings, dated May 16, 2023, Lux Holdings agreed that it was a successor to Apple Eight's obligations under the Union Contract and Owner Agreement.  A copy of the Assumption Agreement is attached hereto as Exhibit 10.

38.     Section 16.5.1 of the Sublease Agreement provides, in relevant part, that:

> Union Contract[3]. As a material term and condition of this Agreement, Tenant shall, as the successor employer to the Hotel's associates and staff, assume, adopt, and be bound by the Union Contract as applicable to Landlord, its now or former property manager and/or the Building. To that end, on or prior to the Commencement Date, Tenant shall execute the Assumption Agreement in the form required by the Union Contract. Tenant shall also take all other actions required to assume, adopt, and be bound by the Union Contract.

39.     *See* Exhibit 1 (Sublease Agreement, § 16.5).  Moreover, Section 16.5.2 of the Sublease Agreement states that:

> Assumed Liabilities: Tenant shall be responsible for, and shall defend, indemnify, and hold Landlord and Landlord's Agents harmless for all liabilities relating to, or arising out of (i) the Union Contract, and all liabilities and obligations arising therefrom or thereunder including but not limited to all benefit funds, (ii) the Union employees, including, but not limited to, all severance pay obligations arising under the Union Contract, (iii) any withdrawal liability assessed by the Pension Fund which is solely attributable to the contribution history at the Property, and (iv) any severance pay due to any Employees under Local Law No. 104 of the

---

[3] The "Union Contract" is defined within the Sublease Agreement as:
     [C]ertain Collective Bargaining Agreement, effective July 1, 2012, between the Hotel Association of New York, City, Inc. and the Union, along with any Schedules or Addendums thereto, and along with any Memorandums of Understanding and/or other amendments to said Collective Bargaining Agreement between the Hotel Association of New York, City, Inc. and the Union, as applicable to the Property, Landlord and/or Landlord's Agents, including, without limitation, any Memorandum of Understanding executed between the Hotel Association of New York, City, Inc. and the Union in or around April 2015, which renewed and extended the Collective Bargaining Agreement until midnight June 30, 2026 (collectively, the "Union Contract").

Local Laws of the City of New York for the Year 2021 (Council Int. No. 2397-A of 2021) (collectively, the "Assumed Liabilities").

*Id.*

40.     On April 22, 2024, Apple Eight received a demand from the Union for Apple Eight to comply with two arbitration awards issued by the Office of the Impartial Chairperson arising from Lux Holdings' failure to pay wages and make remittances to different benefit funds pursuant to the Union Contract.  A copy of the April 22 Demand Notice is attached hereto as Exhibit 11.

41.     The April 22 Demand Notice cited an outstanding balance owed by Lux Holdings of: (i) $592,582.08, in connection with a bond in the amount of $1,125,497 pursuant to IC Award # 2024-12, dated February 9, 2024[4]; (ii) penalties imposed by the IC in the amount of $773,770.70 for failure to post the full bond required by IC Award # 2024-12, pursuant to IC Award #2024-31; and a balance owed by Lux Holdings of $1,507,566.67 under a FUNDS Award # 2024-05F, dated March 8, 2024 (the "Award Liability").

42.     IC Award # 2024-12 required Lux Holdings to post a bond based on a prior arbitration award, IC Award # 2023-118, addressing Lux Holdings' failure to:

> [T]imely and correctly pay wages, failure to make timely and correct deductions and remittances, and unilateral change of existing pay practices at five (5) of its hotels, two (2) of which, the Herald Powered by LuxUrban and the Hotel 57, are the subject of the emergency hearing.  At the emergency hearing, the Union charged LuxUrban with allegedly committing the same violations at another of its hotels: Hotel 46 Times Square.
>
> *Id.*

---

[4] The Award also discussed outstanding obligations owed by Defendant to Herald Powered and Hotel 46 Times Square in the amount of nearly $1 million.

43.     The Impartial Chairperson rejected Lux Holdings' defense that its failure to remit wages in a timely manner was due to an errant, misdirected payment by its banker, Morgan Stanley.  The Chairperson reasoned that "I find this defense unavailing because this incident was *just the latest pattern of similar failures by LuxUrban. . . .*"  *Id.* (emphasis added).

**F.     Lux Holdings Failed to Inform Apple Eight of the Union Arbitration Proceedings**

44.     The April 22 Demand Notice was the first time Apple Eight learned that there had been two arbitration awards issued against Lux Holdings relating to the Union Contract.  Indeed, Lux Holdings never gave Apple Eight notice of the arbitration proceedings or decisions holding it responsible for over $3 million in Award Liability.

45.     On May 3, 2024, Apple Eight sent Lux Holdings a letter demanding that they:

> [I]ndemnify, defend and hold Landlord harmless to the fullest extent required under Section 16.5.2 of the Lease, including, without limitation, for the Award Liability, for any loss, liability, claims, back pay and benefits and any other amounts owed to the Union or employees under the Union Contract (as defined in the Lease) or otherwise arising from or in connection with the events giving rise to the Award Liability, any other arbitration awards affecting Tenant and/or the Premises or for which Landlord is or may become liable as a result of Tenant's failure to comply with its obligations under the Union Contract or to any governmental agency, taxing authority or related entity.

A copy of Apple Eight's May 3 letter is attached hereto as Exhibit 12.

46.     Apple Eight's May 3 letter also noted that Lux Holdings had offered no defense to the Award Liability and "should immediately satisfy the Award Liability to protect Landlord from any loss, cost or expense related thereto."  *Id.* at 2.

47.     To date, Lux Holdings has not responded to Apple Eight's May 3 letter and remains delinquent on its obligations under the Union Contract.

48.     On May 1, 2024, Apple Eight received a Demand for Arbitration notice from the

Union, requesting a hearing before the Office of Impartial Chairperson.  A Copy of the Union's

Arbitration Demand is attached hereto as Exhibit 13.

49.     The issues to be arbitrated include (i) Apple Eight's liability for Lux Holdings'

failure "to pay contributions and remittances [to the Union] for the months of June 2023 to

March, 2024 and continuing, upon which amounts have accrued (and continue to accrue) lost

earnings and interest at two percent (2%) above prime per annum"; and (ii) "if so, what shall be

the remedy?"  *Id.* at 4.

**G.     Apple Eight is Entitled to Damages and Attorneys' Fees for Lux Holdings' Breach
of the Sublease Agreement**

50.     Section 15.2.3 of the Sublease Agreement governs the rent due upon Lux

Holdings' default.  Specifically, Lux Holdings agreed to be liable for all "rent and other charges

reserved as they would, under the terms of the [Sublease Agreement], become due if the

[Sublease Agreement] had not terminated."  Section 15.2.3 provides, in relevant part that Lux

Holdings shall:

> [P]ay and be liable for, on the days originally fixed herein for the payment
> thereof, amounts equal to the several installments of rent and other charges
> reserved as they would, under the terms of this Lease, become due if this
> Lease had not been terminated or if Landlord had not entered or re-entered,
> as aforesaid, and whether the Premises be relet or remain vacant, in whole
> or in part, or for a period less than the remainder of the Term, and for the
> whole thereof. . . .

> *See* Exhibit 1 (Sublease Agreement, § 15.2).

51.      Section 15.2.5 of the Sublease Agreement further provides that Apple Eight is

entitled to liquidated damages for Lux Holdings' default under the Sublease Agreement.  Section

15.2.5 provides, in relevant part:

> In the event that this Lease is terminated for any Event of Default specified
> in Section 15.1 or shall be otherwise terminated by breach of any

16

obligation of Tenant, Tenant covenants and agrees forthwith to pay and be liable for, as and for liquidated and agreed final damages and not as a penalty (and whether or not Landlord has collected any deficiencies or other amounts under Section 15.2.3, or otherwise) a sum equal to the amount by which the Rent payable hereunder for the period from the latest of the date of termination of this Lease or the date through which any monthly deficiencies shall have been paid in full to the Expiration Date of the Term (conclusively presuming the additional rent for each year thereof to be 3% greater per year than the immediately preceding year) exceeds the then fair and reasonable rental value of the Premises for the same period, both discounted at the rate of 6% per annum to present worth. If, before presentation of proof of such liquidated damages to any court, commission or tribunal, the Premises, or any part thereof, shall have been relet by Landlord to a third party unrelated to Landlord for the period that otherwise would have constituted the unexpired portion of the term, or any part thereof, the amount of rent realized by such reletting shall be deemed, prima facie, to be the fair and reasonable rental value for the part or the whole of the Premises (as the case may be) so relet during the term of the reletting.

*Id.*

52.     Finally, pursuant to Section 26.11 of the Sublease Agreement, Apple Eight is entitled to Attorneys' fees arising from Lux Holdings' failure to perform its obligations under the Sublease Agreement. Section 26.11 provides, in relevant part:

**Attorneys' Fees.** In the event that either Landlord or Tenant fails to perform any of its obligations under this Lease or in the event a dispute arises concerning the meaning or interpretation of any provision of this Lease, the defaulting Party or the Party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses incurred by the other Party in enforcing or establishing its rights hereunder, including, without limitation, court costs, costs of arbitration and reasonable independent third-party attorneys' fees, if such an award is awarded by an appropriate court or arbitrator.

*See* Exhibit 1 (Sublease Agreement, § 26.11).

## COUNT I
### (Breach of Contract Against Lux Holdings Under New York Law)

53.     Apple Eight repeats and realleges the allegations of paragraphs 1-52 of this Complaint as if fully set forth herein.

54.     Apple Eight and Lux Holdings entered into a valid, enforceable, and binding Sublease Agreement with a 15-year term, which was anticipated to generate in excess of $95,000,000 in rental income for Apple Eight.

55.     Apple Eight has performed its contractual obligations under the Sublease Agreement, including delivering possession of the Premises to Lux Holdings.

56.     From August 2023 through February 26, 2024, Lux Holdings breached the Sublease Agreement by defaulting as follows:

    i.   Failing to pay Base Rent in the amount of $858,333.34 as required in Section 5.1.1 of the Sublease Agreement;

    ii.  Failing to pay Additional Rent in the amount of $400,654.51, inclusive of interest and fees through February 15, 2024 (excluding Security Deposit payments), in the aggregate, as required in Section 5.2 of the Sublease Agreement; and

    iii. Failing to pay installments of Security Deposits totaling $416,668.00 as required by Section 1of the Sublease Agreement.

57.     Lux Holdings further breached the Sublease Agreement by failing to pay the Union wages and benefits due, including the Award Liability, as required by Section 16 of the Sublease Agreement.

58.     Lux Holdings has also materially breached its contractual obligations under the Sublease by refusing to surrender Hotel 57, notwithstanding that the Sublease Agreement has terminated.

59.     Apple Eight has been substantially damaged as a direct and proximate result of Lux Holdings' failure to pay Base Rent, Additional Rent, installments of Security Deposits, and obligations under the Union Contract, including the Award Liability.

60.     Apple Eight has been substantially damaged by Lux Holdings' impermissible holdover of Hotel 57.

61.     Apple Eight continues to suffer damages from Lux Holdings' refusal to (i) surrender possession of Hotel 57 and (ii) pay rent and other obligations that remain due and owing under the Sublease Agreement, including the Award Liability.

62.     Apple Eight has been damaged as a direct result of Defendants' breaches of the Sublease Agreement in an amount determined at trial but believed to exceed $83 million, including past due rent, liquidated damages, and attorneys' fees and amounts due under the Union Contract.

## COUNT II
**(Breach of Contract Against Lux Hotels Under New York Law)**

63.     Apple Eight repeats and realleges the allegations of paragraphs 1-62 of this Complaint as if fully set forth herein.

64.     Apple Eight and Lux Hotels entered into a valid, enforceable, and binding Guaranty Agreement.

65.     Apple Eight has performed its contractual obligations under the Guaranty Agreement.

66.     Lux Hotels has materially breached its contractual obligations under the Guaranty Agreement by failing to guarantee Lux Holdings' obligations under the Sublease Agreement, including Base Rent, Additional Rent, installments of Security Deposits, and the Award Liability.

19

67.     Apple Eight has been substantially damaged as a direct and proximate result of Lux Hotels' failure to guarantee Lux Holdings' obligations under the Sublease Agreement, including Base Rent, Additional Rent, installments of Security Deposits, and the Award Liability.

68.     Apple Eight has been damaged as a direct result of Lux Hotels' breach of the Guaranty Agreement in an amount determined at trial but believed to exceed $83 million, including past due rent, liquidated damages, and attorneys' fees and amounts due under the Union Contract.

## <u>COUNT III</u>
### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Lux Holdings Under New York Law)

69.     Apple Eight repeats and realleges the allegations of paragraphs 1-68 of this Complaint as if fully set forth herein.

70.     The Sublease Agreement constitutes a valid and enforceable agreement under New York Law.

71.     Implied in the Sublease Agreement is a duty that Lux Holdings act in good faith and deal fairly with Apple Eight.

72.     Lux Holdings willfully ignored its rent obligations, defaulted under the Sublease Agreement, failed to pay its unionized employees and otherwise satisfy its obligations under the Union Contract, and refuses to surrender possession of Hotel 57 after Apple Eight terminated the Sublease Agreement pursuant to Section 15.2.

73.     Lux Holdings thus breached its obligations of good faith and fair dealing implied in the Sublease Agreement as a matter of New York law.

74.     As a result of Defendant's breaches, Apple Eight has been damaged in an amount to be determined at trial but believed to exceed $83 million.

## COUNT IV
### (Unjust Enrichment Against Lux Holdings Under New York Law)

75.     Apple Eight repeats and realleges the allegations of paragraphs 1-74 of this Complaint as if fully set forth herein.

76.     By improperly defaulting under the Sublease Agreement and impermissibly holding over Hotel 57, Lux Holdings has intentionally and improperly pocketed hotel income generated during Lux Holdings' unlawful holdover since April 16, 2024 and acquired the income for itself.

77.     Lux Holdings has unjustly benefited from Lux Holdings' holdover since April 16, 2024 by pocketing funds from the hotel's operation, while Apple Eight cannot regain possession of the hotel and generate any hotel income that rightfully belongs to it.

78.     Thus, Lux Holdings has unjustly enriched itself at the expense of Apple Eight.

79.     It would be against equity and good conscience to allow Lux Holdings to retain the hotel funds that it has generated during its impermissible holdover since April 16, 2024 without compensating Apple Eight in an amount equal to the hotel income that Lux Holdings has retained since that date.

80.     Apple Eight seeks full compensatory damages from Lux Holdings, including reasonable interest on all wrongfully withheld monies since April 16, 2024.

## COUNT V
### (Conversion Under New York Law Against Lux Holdings)

81.     Apple Eight repeats and realleges the allegations of paragraphs 1-80 of this Complaint as if fully set forth herein.

82.     By improperly defaulting under the Sublease Agreement and impermissibly holding over Hotel 57, Lux Holdings has intentionally and improperly pocketed hotel income during Lux Holdings' unlawful holdover and acquired it for Defendants' benefit.

21

83.     Apple Eight had a possessory interest in all revenue generated from Hotel 57 following Lux Holdings' termination of the Sublease Agreement on April 16, 2024.

84.     Lux Holdings, without authorization, continued to collect revenue from Hotel 57 following termination of the Sublease Agreement and Lux Holdings' impermissible holdover, impermissibly denying Apple Eight from receiving such revenue.

85.     Lux Holdings knew that Apple Eight had a possessory interest in Hotel 57's revenue, yet Lux Holdings intentionally took and converted the hotel revenue for its own use and benefit.

86.     Lux Holdings interfered with Apple Eight's access, control, and possession of its property.

87.     As a result, Apple Eight has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Apple Eight respectfully requests that this Court enter an order:

(a) Awarding damages and losses suffered by Apple Eight as a result of Defendants' misconduct, in an amount to be determined at trial, which exceeds $83 million, as well as compensatory damages, liquidated damages, consequential damages, punitive damages, interest, attorney's fees, and any other relief deemed equitable by this Court as a result of Defendants' misconduct; and

(b) Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York                  **HOGAN LOVELLS US LLP**
       June 3, 2024

                                               */s/ Claude G. Szyfer*
                                               Claude G. Szyfer
                                               Elizabeth C. Milburn
                                               390 Madison Avenue
                                               New York, New York 10017
                                               Tel: +1 212.918.3000
                                               Fax: +1 212.918.3100
                                               claude.szyfer@hoganlovells.com
                                               tina.milburn@hoganlovells.com

                                               *Counsel for Plaintiff Apple Eight Hospitality*
                                             *Ownership, Inc.*